UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GARNER CONSTRUCTION, INC., CASCADE TOWER & RIGGING, INC., and KIMACO, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS, Local 302, and NESS CRANES, INC.,<br><br>Defendants. | No. C07-0775MJP<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |

Plaintiffs have moved for a preliminary injunction requiring Defendant International Union of Operating Engineers, Local 302 ("the Union") to extend Plaintiffs' labor contracts that had expired on May 31, 2007. Plaintiffs also request a preliminary injunction to prohibit Defendant Ness Cranes, Inc. ("Ness") from luring away Plaintiffs' employees. Upon review of the record (Dk. Nos. 5, 6, 9, 10, 11, 13, 14, 15, 17, 18, 19) and the documents submitted by the parties, the Court DENIES Plaintiffs' motion for lack of jurisdiction. The Norris-LaGuardia Act strips this Court of jurisdiction to grant Plaintiffs their requested injunctions.

ORDER - 1

**I. Background**

Plaintiffs are three companies specializing in providing tower crane services. The Union is a labor union that represents employees in the construction business throughout fifteen counties in Washington and Alaska.

For the last several years, Plaintiffs have had a contractual relationship with the Union through "Compliance Agreements." These Compliance Agreements posit that Plaintiffs and the Union agree to be bound by the Master Labor Agreement that the Union had signed with the Associated General Contractors of Washington. The Master Labor Agreement, in turn, recognized the Union as the exclusive bargaining agent for the signatory companies' employees and set out a schedule of wages, hours, and other mandatory subjects of collective bargaining.

The Master Labor Agreement, along with the Compliance Agreements, was due to expire on May 31, 2007. Roughly two months before the expiration date, the Union informed Plaintiffs that it did not wish to renew their relationship after the May 31 termination.

While the Union rejected any continued relationship with Plaintiffs, it *did* renew its relationship with Defendant Ness. As part of this renewal, Ness signed a "Brokerage Agreement" in which it agreed not to assign any union employees to specific contracting jobs without first getting the approval of the Union.

Plaintiffs believed that the Union's refusal to renew their contracts, combined with the Union's Brokerage Agreement with Ness, was part of a unified plan for the Union to unionize ground-level construction subcontractors throughout its geographical area. According to Plaintiffs, the repudiation of their contracts, combined with the Brokerage Agreement with Ness, meant that the Union effectively controlled the supply of skilled crane operators. Plaintiffs reasoned that the Union would use this leverage to withhold crane operators from any job that was not entirely staffed by union subcontractors, thus forcing general contractors to use only union subcontractors in order to obtain crane operators.

ORDER - 2

On April 12, 2007, Plaintiffs filed an unfair labor charge against the Union with the NLRB, alleging that the Union's repudiation of their contracts violated Sections 8(b)(4)(ii)(B) and 8(b)(4)(i)(A) of the National Labor Relations Act, 29 U.S.C. § 151 et seq.  The NLRB reached a Settlement Agreement with the Union, in which the Union did not admit liability but agreed to:

> "Cease and desist from further attempting to terminate our relationship with Cascade, Garner, and Kimaco, or refusing to bargain for successor agreements with them, if an object of that conduct is to compel them either to cease doing business with the non-Union contractors or to force non-Union contractors to sign collective-bargaining agreements with the Union."

The settlement agreement provided that the Union was free to terminate business relations with Plaintiffs as long as it did so for lawful reasons.

On May 21, 2007, Plaintiffs filed suit in this Court.  They alleged that the actions of the Union and Ness violated various provisions of the National Labor Relations Act, Sherman Anti-Trust Act, Washington anti-trust law, Washington sex-discrimination law, and Washington common tort law.  On June 11, 2007, Plaintiffs filed the present motion, which sought a preliminary injunction to force the Union to maintain and honor Plaintiffs' pre-May 31 Compliance Agreements.

Plaintiffs' June 11 motion did not specifically request any injunctive relief against Ness. However, in a supplemental brief filed on July 3, 2007, Plaintiffs also sought to enjoin "Ness Cranes' attempt to lure employees dispatched to work with the plaintiffs on existing contracts."

## II. Discussion

**A.   The Norris-LaGuardia Act bars the Court from granting Plaintiffs a preliminary injunction.**

The Court concludes that it lacks jurisdiction to grant Plaintiffs a preliminary injunction, due to the anti-injunction provisions of the Norris-LaGuardia Act, 29 U.S.C. § 101 et seq. ("the Act.")

The Act generally strips Federal courts of jurisdiction "to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute." 29 U.S.C. § 101.  The Act defines "labor dispute" as including "any controversy concerning terms or conditions

ORDER - 3

1   of employment, or concerning the association or representation of persons in negotiating, fixing,

2   maintaining, changing, or seeking to arrange terms or conditions of employment." 29 U.S.C. §

3   113(c). Under this definition, the present case clearly qualifies as a case involving a labor dispute. It

4   deals with the Union's failure to renew Plaintiffs' labor agreements and Ness' efforts to poach

5   Plaintiffs' employees. Both issues involve "the association or representation of persons in negotiating

6   . . . or seeking to arrange terms or conditions of employment." Id. See also Burlington N. Santa Fe

7   Ry. Co. v. Int'l Bd. of Teamsters Local 174, 203 F.3d 703, 709 (9th Cir. 2000) (en banc) (noting that

8   "The Supreme Court has consistently characterized Norris-LaGuardia's definition of 'labor dispute' as

9   'broad.'")

10   Because the present case involves a labor dispute, it is subject to the Act's restriction on

11   Federal courts' injunctive power. Notably, Section 4 of the Act bars Federal courts from issuing an

12   injunction requiring any person or persons "to remain in any relation of employment." 29 U.S.C. §

13   104(a). In this case, Plaintiffs are seeking an injunction to require the Union to extend their collective

14   bargaining agreement. Any such injunction would be tantamount to requiring the parties "to remain in

15   a relation of employment," thus violating Section 4 of the Act.

16   Similarly, Section 4 prohibits injunctions against anyone who induces a third party not to

17   remain in a condition of employment. 29 U.S.C. § 104(i). Ness' solicitation of Plaintiffs' employees

18   qualifies as inducing those employees to end their working relationship with Plaintiffs. Thus, Ness'

19   activity is protected by Section 4, and this Court may not enjoin it.

20

21   **B.    The Norris-LaGuardia bar does not disappear merely because Plaintiffs have alleged violations of antitrust laws.**

22

23   Plaintiffs argue that the Norris-LaGuardia Act does not apply when a defendant's conduct is

24   alleged to violate anti-trust laws. But this runs contrary to Section 5 of the Act, which expressly bars

25   a court from enjoining any of the protected activities of Section 4 *even if* those activities constitute "an

ORDER - 4

unlawful combination or conspiracy." 29 U.S.C. § 105. Because the Union's refusal to remain in a relation of employment with Plaintiffs is protected by Section 4, Section 5 bars this Court from enjoining this activity even if it constitutes an anti-trust violation. Similarly, Ness' poaching of Plaintiffs' employees is protected by Section 4 and thus is non-enjoinable under Section 5 even if it violates antitrust laws. See Milk Wagon Drivers' Union, Local No. 753 v. Lake Valley Farm Products, 311 U.S. 91, 103 (1940) ("For us to hold, in the face of [the Norris-LaGuardia Act], that the federal courts have jurisdiction to grant injunctions in cases growing out of labor disputes, merely because alleged violations of the Sherman Act are involved, would run counter to the plain mandate of the act and would reverse the declared purpose of Congress").

Plaintiffs argue that the Supreme Court retreated from its Milk Wagon position in Allen Bradley Co. v. Local Union No. 3, Int'l Bd. of Elec. Workers, 325 U.S. 797 (1945) and Los Angeles Meat & Provision Drivers Union v. United States, 371 U.S. 94 (1962). It is true that these cases allowed injunctive relief when unions struck antitrust deals with third parties. See Allen Bradley, 325 U.S. at 808; Los Angeles Meat, 371 U.S. at 99-101. But in those cases, the unlawful agreements *were* the specific activities being enjoined. By contrast, Plaintiffs here are not seeking to enjoin Defendants' Brokerage Agreement as an illegal antitrust agreement. Rather, Plaintiffs are seeking two separate injunctions: one against the Union's decision to disclaim Plaintiffs' pre-May 31 contracts, and one against Ness' attempts to poach Plaintiffs' employees. The Allen Bradley line of cases do not allow injunctions against such unilateral labor activities; they appear only to allow injunctions against antitrust agreements themselves. Notably, Plaintiffs nowhere allege that the Union's disclaimer of Plaintiffs' contracts and Ness' poaching of Plaintiffs' employees were part of a single agreement between those two parties. As most, they speculate that "Ness Cranes may have had prior notice of the Union's intent to disclaim interest in the plaintiff companies" and used this information in their efforts to poach Plaintiffs' employees.

ORDER - 5

### C. The Norris-LaGuardia bar does not disappear merely because Plaintiffs have alleged that the Union violated Washington sex-discrimination law.

Plaintiffs allege that "anti-discrimination policy trumps the prohibitions of the Norris-LaGuardia Act," and thus the Court may enjoin the Union's disclaimer of Plaintiffs' contracts because the Union violated Washington sex-discrimination law. But there is no logic for this proposition. Under the Supremacy Clause, any state law must yield to contrary Federal law. See U.S. CONST. art. VI clause 2. Thus, it is difficult to see how Washington sex-discrimination laws could ever "trump" the clear dictates of Norris-LaGuardia.

Plaintiffs point to two district court cases holding that the anti-injunction provisions of Norris-LaGuardia fall away when plaintiffs allege a *Federal Title VII* violation. See United States v. Building and Const. Trades Council of St. Louis, Mo., AFL-CIO, 271 F.Supp. 447, 453 (E.D. Mo. 1966); Evans v. Local Union 2127, Intern. Broth. of Elec. Workers, AFL-CIO, 313 F.Supp. 1354, 1358-59 (D. Ga. 1969). But Title VII is a Federal statute and contains an express statutory exemption from Norris-LaGuardia. See 42 U.S.C. § 200e-5(h). By contrast, Washington sex-discrimination laws have no power to suspend Norris-LaGuardia and no language purporting to do so.

### III. Conclusion

The Norris-LaGuardia Act strips this Court of jurisdiction to issue an injunction against the Union's disclaimer of Plaintiffs' contracts or Ness' poaching of Plaintiffs' employees. The Norris-LaGuardia jurisdictional bar does not disappear merely because Plaintiffs have alleged violations of antitrust laws or state discrimination laws. Plaintiffs' motion for a preliminary injunction is therefore DENIED for lack of jurisdiction.

ORDER - 6

1  The Clerk is directed to send copies of this order to all counsel of record.

2  Dated: July 9, 2007.

4                                               s/ Marsha J. Pechman

5                                               Marsha J. Pechman

6                                               United States District Judge

ORDER - 7